Michael J.D. Sweeney
*(Pro Hac Vice)*
**GETMAN, SWEENEY & DUNN, PLLC**
260 Fair Street
Kingston, NY 12401
Telephone: (845) 255-9370
Facsimile: (845) 255-8649
msweeney@getmansweeney.com

Susan Martin *(Pro Hac Vice)*
Jennifer Kroll *(Pro Hac Vice)*
**MARTIN & BONNETT, P.L.L.C.**
4647 N. 32nd St., Suite 185
Phoenix, AZ 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
smartin@martinbonnett.com
jkroll@martinbonnett.com

Edward Tuddenham
*(Pro Hac Vice)*
23 Rue Du Laos
Paris, France
33 684 79 89 30
etudden@prismnet.com

Howard Z. Rosen
**ROSEN MARSILI RAPP LLP**
3600 Wilshire Blvd., Suite 1800
Los Angeles, CA 90010
Telephone: (213) 389-6050
Facsimile: (213) 389-0663
hzrosen@rmrllp.com

**Attorneys for Plaintiffs**

Victor J. Cosentino, Esq., State Bar No. 163672
Gloria G. Medel, Esq., State Bar No. 199462
**LARSON & GASTON, LLP**
200 South Los Robles Avenue, Suite 530
Pasadena, California 91101
Telephone (626) 795-6001
Facsimile  (626) 795-0016
victor.cosentino@larsongaston.com
gloria.medel@larsongaston.com

**Attorneys for Defendants**

Joint Motion in Limine to Exclude Testimony of Dr. Newlon

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**SALVADOR CANAVA, et al., individually and on behalf of others similarly situated,**

      **Plaintiffs,**

      **v.**

**RAIL DELIVERY SERVICES, INCORPORATED, et al.,**

      **Defendants.**

Case No. 5:19-cv-00401-SB (KKx)
Honorable Stanley Blumenfeld, Jr.
Courtroom 6C

**JOINT MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF ELIZABETH NEWLON**

Complaint Filed: March 4, 2019

1.  **Evidence to be excluded: the testimony of Elizabeth Newlon.**
2.  **Anticipated prejudice: Ms. Newlon's testimony is inadmissible and prejudicial to Plaintiffs because it would serve only to confuse the jury and improperly displace the role of the Court and jury and because she is not qualified to testify on matters included in her Report (Exhibit 150, attached hereto).**

# TABLE OF CONTENTS

I.   Plaintiffs' Position (Moving Party) ................................................................1

   A.   Legal Standard. ........................................................................................1

   B.   Newlon's Testimony Includes Impermissible & Incorrect Legal Conclusions. [Report ¶¶ 11-12; 14-20, 33-34, 42, 43-48, 59-62]. ...............................1

   C.   Newlon's Testimony About RDS's Control of Drivers Concerns Matters of Common Knowledge and Does Not Assist the Jury. [Rep. ¶¶ 11, 21-42, 61-62]. .2

   D.   Much of Newlon's Testimony is Completely Irrelevant. [Report ¶¶ 11-12, 15-20, 35, 49-58, 63-65]. ...................................................................................4

   E.   Newlon's Testimony is Not Reliable. [Report ¶¶ 11, 14-65]...............................5

II.  Defendants' Contentions in Opposition ..........................................................6

   A.   Dr. Newlon is not Offering Legal Opinions or Conclusions..............................6

   B.   Dr. Newlon's Testimony About RDS's Control of Drivers is not Limited to "Matters of Common Knowledge" and Would Assist the Jury. [Rep. ¶¶ 1, 21-42, 61-62]..............................................................................................7

   C.   Dr. Newlon's Testimony is Relevant. [Report ¶¶ 11-12, 15-20, 35, 49-58, 63-65]. .........................................................................................................8

   D.   Dr. Newlon's Testimony is Reliable ..................................................................9

III. Plaintiffs' Contentions in Reply ...................................................................11

   A.  Newlon's Improper Legal Conclusions. ..........................................................11

   B.  Newlon's Opinions on Control Address Matters of Common Knowledge...........12

   C.  Newlon's So-Called "Economic Opinions" are Not Relevant. ...........................12

   D. Newlon's Qualifications and Methodology.......................................................13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AFMS LLC v. United Parcel Serv. Co.*,
  No. 10-5830, 2014 WL 12515335 (C.D. Cal. Feb. 5, 2014)..........................4

*In re Apollo Grp. Inc. Sec. Litig.*,
  527 F. Supp. 2d 957 (D. Ariz. 2007) ..........................................................2

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  No. 17-205, 2020 WL 2553181 (S.D. Cal. May 20, 2020) ......................3, 9

*Estate of Barabin v. AstenJohnson, Inc.*,
  740 F.3d 457 (9th Cir.2014) (en banc) ......................................................11

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) .............................................................1, 5, 11

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ....................................................................4, 9

*Estate of Cruz-Sanchez v. United States*,
  No. 17-cv-569-AJB-NLS, 2019 U.S. Dist. LEXIS 161276 (S.D. Cal. Sep.
  17, 2019) ........................................................................................................9

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)....................................................................................1, 4

*Dynamex Operations W. v. Superior Ct.*,
  4 Cal. 5th 903 (2018) .....................................................................................2

*Elsayed Mukhtar v. California State Univ.*,
  299 F.3d 1053 (9th Cir. 2002) ..................................................................4, 7

*Hale v. State of Ariz.*,
  967 F.2d 1356 (9th Cir. 1992) .......................................................................1

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ................................................................1, 7, 8

*Hathaway v. Idaho Pacific Corporation*,
   2020 U.S. Dist. LEXIS 97965, 2020 WL 2858003 (D. Idaho June 2,
   2020) ........................................................................................................... 8

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) ...................................................................... 4

*Highland Cap. Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ....................................................... 3, 9

*Hoyt v. Career Sys. Dev. Corp.*,
   No. 07-1733, 2010 WL 11508867 (S.D. Cal. May 3, 2010) ............... 1, 3, 13

*Johns v. Bayer Corp.*,
   No. 09-1935, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) .................. 3, 4, 9

*Klaczak v. Consol. Med. Transp.*,
   458 F. Supp. 2d 622 (N.D. Ill. 2006) ............................................................ 4

*Lackey v. SDT Waste & Debris Servs., LLC*,
   No. 11-1087, 2014 WL 3866465 (E.D. La. Aug. 6, 2014) ......................... 3, 9

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ........................................................................... 1

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. v. Exxon Mobil Corp.*,
   No. 00 CIV 1898 (SAS), 2009 U.S. Dist. LEXIS 63563 (S.D.N.Y. July
   21, 2009) ....................................................................................................... 8

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ...................................................................... 1

*Perez v. Seafood Peddler of San Rafael, Inc.*,
   No. 12-00116, 2014 WL 2810144 (N.D. Cal. June 20, 2014) ................. 1, 12

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. 11-07098, 2014 WL 12597433 (C.D. Cal. Oct. 31, 2014) ...................... 2

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ........................................................................ 9

*Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*,

    No. 14-1665, 2015 WL 12697654 (C.D. Cal. Nov. 3, 2015) ..................................... 1, 5

*Real v. Driscoll Strawberry Assocs., Inc.*,

    603 F.2d 748 (9th Cir. 1979) ........................................................................... 2

*Specht v. Jensen*,

    853 F.2d 805 (10th Cir. 1988) ......................................................................... 7

*United States v. Finley*,

    301 F.3d 1000 (9th Cir. 2002) ......................................................................... 1

*Vendor Surveillance Corp. v. Henning*,

    62 Cal. App. 5th 59 (2021) .............................................................................. 1

*Walker v. Contra Costa Cty.*,

    No. 03-3723, 2006 WL 3371438 (N.D. Cal. Nov. 21, 2006)........................................ 4

**Rules**

Fed. R. Evid. 702 ................................................................................ 1, 2, 4, 6, 11, 14

Fed. R. Evid. 1006 .............................................................................. 4, 13, 14

## I.    Plaintiffs' Position (Moving Party)

**A.    Legal Standard.**

The proponent of expert testimony carries the burden of proving admissibility. *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). An expert opinion is admissible if (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the principles and methods to the facts of the case. *Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.,* No. 14-1665, 2015 WL 12697654, at *1 (C.D. Cal. Nov. 3, 2015) (citing Fed. R. Evid. 702).  In addition to the express requirements of Fed. R. Evid. 702, the court "must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 597 (1993)).

**B.    Newlon's Testimony Includes Impermissible & Incorrect Legal Conclusions. [Report ¶¶ 11-12; 14-20, 33-34, 42, 43-48, 59-62].**

"[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal citations and quotation marks omitted); *see also* Fed. R. Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue"). Here, whether an employer-employee relationship existed under the FLSA and California Labor Code are questions of law. *Hale v. State of Ariz.*, 967 F.2d 1356, 1360 (9th Cir. 1992); *Vendor Surveillance Corp. v. Henning*, 62 Cal. App. 5th 59, 68 (2021). Accordingly, Newlon "may not opine at all on whether anyone who has worked for [RDS] is an employee or an independent contractor." *Perez v. Seafood Peddler of San Rafael, Inc.*, No. 12-00116, 2014 WL 2810144, at *3 (N.D. Cal. June 20, 2014); *Hoyt v. Career Sys. Dev. Corp.*, No. 07-1733, 2010 WL 11508867, at

*3 (S.D. Cal. May 3, 2010) ("opining as to whether Plaintiff was an independent contractor or an employee…would constitute a legal conclusion and invade the jury's fact-finding role and the Court's role in instructing the jury on the applicable law.").

Newlon's various opinions constitute impermissible legal conclusions regarding whether Drivers are independent contractors or employees and present irrelevant and incorrect assertions regarding what constitutes an employer-employee or independent contractor relationship which will confuse the jury and invade the province of the Court. They are all inadmissible. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) ("Zadek's legal conclusions not only invaded the province of the trial judge, but constituted erroneous statements of law.")

**C.    Newlon's Testimony About RDS's Control of Drivers Concerns Matters of Common Knowledge and Does Not Assist the Jury. [Rep. ¶¶ 11, 21-42, 61-62].**

For expert testimony to assist the jury, "the subject matter at issue must be beyond the common knowledge of the average layman." *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). "'[E]xpert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people, because it would not assist the trier of fact in analyzing the evidence.'" *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2014 WL 12597433, at *3 (C.D. Cal. Oct. 31, 2014) (quoting *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 961–62 (D. Ariz. 2007)). *See* Fed. R. Evid. 702 Advisory Committee Note (courts should consider "the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently" the issues "without enlightenment from those having a specialized understanding of the subject").

In this case, the central legal question is whether Drivers are properly classified as independent contractors or whether they are, in fact, employees. To answer that question, the applicable legal tests look to the facts regarding control exercised by the employer.[1] In the Report, Newlon opines that RDS "does not control the manner and means with which

---

[1] *See Dynamex Operations W. v. Superior Ct.*, 4 Cal. 5th 903, 964 (2018); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

the owner-operators work for [RDS's] clients" because "RDS's system relies on the owner-operators to determine…their weekly schedule, compensation, and what jobs they take. Owner-operators select[] the combination of hours, tasks, and earnings…" and "RDS does not supervise each individual movement of freight by the drivers." (Report at ¶ 11). *See* Report at ¶¶ 21-41. Not only is Newlon's explanation of control contrary to controlling precedent (*see* Pls.' MSJ Reply, Doc. 272 at 2-9), but her examples are precisely the factual determinations to be made by the jury, not an expert. No juror needs expert testimony to understand whether Drivers determined their weekly schedule, compensation, and what jobs they take, or whether RDS supervised the individual movement of freight. *See Hoyt*, 2010 WL 11508867, at *3 ("[T]he the most important factor, the degree of control Defendant exercised over Plaintiff, falls within the common knowledge and experience of the jury and that expert testimony on the subject is excluded."). Newlon's statements on these issues—*on which she has no specialized knowledge*—are merely a narrative of the case which a juror is equally capable of constructing. Because the issues regarding RDS's control over Drivers fall within the common knowledge of the jurors, and Newlon has no greater or more specialized knowledge of these facts than the jurors will, her testimony is inadmissible.

Tellingly, Newlon's opinions on RDS's control, like the rest of her report, rely almost entirely on declarations, depositions, and the employment agreements. That evidence, however, should be presented to the jury directly and expert testimony that simply rehashes the record is improper. *See Johns v. Bayer Corp.*, No. 09-1935, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013) (citing *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005)) ("an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence")); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-205, 2020 WL 2553181, at *7 (S.D. Cal. May 20, 2020) ("Donohoe is simply providing a narrative of Aya's theory of the case, which 'is properly presented through percipient witnesses and documentary evidence.'"); *Lackey v. SDT Waste & Debris Servs., LLC*, No. 11-1087, 2014 WL 3866465, at *8 (E.D. La. Aug. 6, 2014) ("Strobel bases his findings on (1) deposition testimony, (2) a company policy, (3)

GPS records for SDT trucks, (4) and employee time records. The jury is fully capable of reviewing this evidence without expert assistance and arriving at its own conclusions.").

In addition, Newlon's testimony and exhibits regarding the purported "offer rejections" and drivers' average number of workdays (Report ¶¶ 30-35; 38-42; ) merely present summaries of evidence produced by RDS that does not require expert testimony. "Expert testimony is not necessary to summarize voluminous documents or records—Rule 1006 provides such a mechanism without the use of expert testimony." *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 666 (N.D. Ill. 2006). *See Johns*, 2013 WL 1498965, at *28 ("none of this evidence or testimony requires the providence of an expert," referencing Fed. R. Evid. 1006). "[B]y providing 'statistical' support for a matter within the common knowledge of the jury, [Newlon]'s testimony lends an improper aura of expertise to [RDS's] version of the facts." *AFMS LLC v. United Parcel Serv. Co.*, No. 10-5830, 2014 WL 12515335, at *4 (C.D. Cal. Feb. 5, 2014). *See Elsayed Mukhtar v. California State Univ.*, 299 F.3d 1053, 1063–64 (9th Cir. 2002) ("Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony."). Because Newlon's opinions would add little or nothing outside of common knowledge or a summary record evidence that can be presented without expert testimony, her testimony would unduly prejudice Plaintiffs because it would come "cloaked in authority" and imbued with an "aura of expertise." *Walker v. Contra Costa Cty.*, No. 03-3723, 2006 WL 3371438, at *5 (N.D. Cal. Nov. 21, 2006).

**D.     Much of Newlon's Testimony is Completely Irrelevant. [Report ¶¶ 11-12, 15-20, 35, 49-58, 63-65].**

"Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002). "Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotes omitted). "The evidence must logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

Here, Newlon offers multiple opinions regarding issues that are entirely irrelevant to

the issues that must be decided by the jury. These include, *inter alia*, whether RDS has an "economic incentive to retain the right to control" Drivers' work (Report ¶¶ 11, 59,64-65), what Newlon refers to as the "economic model of an employer" (*id*. ¶ 12) and whether there are "economic reasons why RDS would not retain the right to control" Drivers' work (*id*.), whether RDS and Drivers would "be worse off" if RDS increased its control of Drivers (*id*. ¶¶ 49-52), and whether RDS suppressed market wages (*id*. ¶¶ 53-58). These issues and those in the paragraphs listed above have absolutely no bearing to the facts that must be decided by the jury or the relevant legal tests that determine the employer-employee relationship.

**E.    Newlon's Testimony is Not Reliable. [Report ¶¶ 11, 14-65].**

Testimony rests on a "reliable foundation" if it is rooted "in the knowledge and experience of the relevant discipline." *Rainbow Sandals*, 2015 WL 12697654, at *2 (quoting *City of Pomona*, 750 F.3d at 1043-44). The objective of *Daubert's* gatekeeping requirement is to "make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co*., 526 U.S. at 152. "The Court has 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Id*.

Here, Newlon offers opinions in each of the paragraphs above on issues for which she is not qualified as an expert and/or those opinions are not based on "intellectual rigor" and sound methodology. Rather, she makes broad generalizations based on anecdotal testimony from Defendants, the Drivers, or internet searches. By way of example, her claim that the "Southern California area has experienced a driver shortage of years" is solely supported by the testimony of a single Driver and her "economic analysis" depends on first establishing a "competitive labor market for truck drivers," a claim that is likewise based on anecdotal testimony and her internet search for jobs. (Report ¶¶ 50-51). Her testimony does not meet the requirements of Fed. R. Evid. 702 or *Daubert* and should not be presented to the jury at trial.

## II.   Defendants' Contentions in Opposition

Defendants oppose Plaintiffs' motion to completely exclude the testimony of Elizabeth Newlon, Ph.D.

### A.   Dr. Newlon is not Offering Legal Opinions or Conclusions

As recognized in *Hangarter v. Provident Life and Acc. Ins. Co.,* 373 F.3d 998, 1016-17 (9th Cir. 2004), "[i]t is well-established … that expert testimony concerning an ultimate issue is not per se improper." *Id. quoting Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002). Federal Rule of Evidence ("FRE") 704(a) provides that expert testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Referencing applicable law does not automatically bar the testimony. In *Hangarten*, the court found:

> [The expert's] testimony did not improperly usurp the court's role by instructing the jury as to the applicable law. Although [the expert's] testimony that Defendants departed from insurance industry norms relied in part on his understanding of the requirements of state law, specifically California's Unfair Settlement Claims Practice § 2695, "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). *Hangarter*, 373 F.3d at 1016-17.

Here, Dr. Newlon does not offer an opinion or conclusion that drivers are employees or independent contractors under any applicable legal test and so does not usurp the role of the Court. Indeed, while Plaintiffs ambiguously identify several sections of her report, Plaintiffs do not identify any specific statement from her written report that they contend is such an ultimate conclusion.

Dr. Newlon, an economist, was asked to examine and "opine about the economics of Plaintiffs' claim that the Defendants controlled or retained the right to control the work performed by the independent truck drivers, whom they contract with for services and equipment ("owner-operators"), as independent contractors instead of employees. [Her]

economic analysis of Plaintiffs' claim also includes an examination of RDS's alleged ability to suppress driver compensation." (Newlon Rep. ¶ 2.) She expressly disavowed that she was taking a position on the legal issues in this matter. (*Id.*, n. 2.) Plaintiffs' arguments to the contrary notwithstanding, Dr. Newlon's opinions are important and distinct from the legal arguments of the lawyers. She is *not* presenting a *legal conclusion* or an opinion as to a legal conclusion. Rather, as an economist, she is expressing her expert opinion on the economic realities of the relationships. Essentially, she addresses the economic mutual interdependence at work in the interactions and relationships of the parties in these proceedings. As such, she offers economic opinions, not legal conclusions. *See*, *e.g.* *Hathaway v. Idaho Pacific Corporation*, 2020 U.S. Dist. LEXIS 97965, *10, 2020 WL 2858003 (D.Idaho June 2, 2020) (statement that '[t]he most egregious and prejudicial emails not previously produced are set forth separately below," was opinion, not legal conclusion).

Plaintiffs are in no way prejudiced by an expression of an expert economist's opinion and will have ample opportunity through opening statements, cross-examination, closing arguments, and filed legal arguments, to advocate against the acceptance of her economic analysis to the facts and law in this case.

Moreover, even if the Court were to find that some of Dr. Newlon's statements could be interpreted as ultimate legal conclusions, the proper remedy would be to impose limits on those specific statements rather than entirely exclude her testimony. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. v. Exxon Mobil Corp.*, No. 00 CIV 1898 (SAS), 2009 U.S. Dist. LEXIS 63563, at *39 (S.D.N.Y. July 21, 2009) (expert testimony is permissible if it is reframed to avoid opining on legal conclusions).

**B.    Dr. Newlon's Testimony About RDS's Control of Drivers is not Limited to "Matters of Common Knowledge" and Would Assist the Jury. [Rep. ¶¶ 1, 21-42, 61-62].**

Plaintiffs argue the Court should exclude Dr. Newlon's opinion that RDS "does not control the manner and means with which the owner-operators work for [RDS's] clients" because her opinion is "contrary to controlling precedent (see Pls.' MSJ Reply, Doc. 272 at

2-9)," and because "her examples are precisely the factual determinations to be made by the jury, not an expert." Defendants addressed Plaintiffs' legal argument on controlling precedent, elsewhere, but the argument that an expert cannot review the facts of the case in conjunction with rendering opinions is simply wrong. Unlike the experts in the inapposite cases cited by Plaintiffs,[2] Newlon offers opinions as well as facts in her report. S*ee, Estate of Cruz-Sanchez v. United States*, No. 17-cv-569-AJB-NLS, 2019 U.S. Dist. LEXIS 161276, at *7 (S.D. Cal. Sep. 17, 2019) (expert report was not improper factual narrative because it provides both facts and opinions regarding defendants' alleged actions).

To render economic opinions on the facts and circumstances, Dr. Newlon must describe and review the facts she is using for her economic analysis. She summarizes, analyzes, and interprets voluminous data, simplifying it into charts and graphs and then explaining it so that the jury can understand the data in a way it otherwise could not. (See, e.g., Newlon Rep. Exs. 3-9, and App. A-F.) If Plaintiffs contest Dr. Newlon's analysis, they will have the opportunity to offer contrary evidence, object during her direct testimony, and use cross-examination to challenge her accuracy and credibility in front of the jury. See *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (admissible evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion).

**C.     Dr. Newlon's Testimony is Relevant. [Report ¶¶ 11-12, 15-20, 35, 49-58, 63-65].**

As noted in Plaintiffs' motion, "evidence must logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d at 942. Under that test, Dr. Newman's report

---

[2]     *Johns v. Bayer Corp.*, No. 09-1935, 2013 WL 1498965, at *28 (S.D.Cal. Apr. 10, 2013) (citing *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) ("an expert cannot be presented to the jury *solely for the purpose of constructing a factual narrative based upon record evidence*")); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-205, 2020 WL 2553181, at *7 (S.D.Cal. May 20, 2020) ("*Donohoe is simply providing a narrative of Aya's theory of the case*, which 'is properly presented through percipient witnesses and documentary evidence.'"); *Lackey v. SDT Waste & Debris Servs.*, LLC, No. 11-1087, 2014 WL 3866465, at *8 (E.D.La. Aug. 6, 2014) (excluding testimony because all conclusions were ultimate factual determinations to be made by jury).

is directly relevant because it examines the factual and economic underpinnings of the allegations asserted by Plaintiffs in their Third Amended Complaint and her report responds to those allegations in conjunction with the evidence produced in this case. (See e.g., Third Amended Complaint [Doc. 208] ¶71 ("Defendants' scheme" shifts costs to plaintiffs so Defendants can keep benefits); ¶78, (Defendants "extracted profits" by not paying wages due); 82 (Defendants shift business costs); ¶¶129-132 (Defendants' business model is an unfair business practice).

As part of her assignment, Dr. Newlon and economists under her direction reviewed a vast amount of documentary evidence and data. (Newlon Rep. Ex. 2). She and her team reviewed and analyzed driver records and related data, and prepared numerous analytical summaries and charts along with a comprehensive narrative discussion of those summaries and charts. (*See*, *e.g*., Newlon Rep. Exs. 3-9, and App. A-F.) In contrast to Plaintiffs' desire to suppress and ignore all facts that show the drivers were not controlled by RDS, her opinions regarding whether RDS has an "economic incentive to retain the right to control" Drivers' work (Newlon Rep. ¶¶ 11, 59,64-65), whether there are "economic reasons why RDS would not retain the right to control" Drivers' work (*Id*.), whether RDS and Drivers would "be worse off" if RDS increased its control of Drivers (*Id*. ¶¶ 49-52), and whether RDS suppressed market wages (*Id*. ¶¶ 53-58) bear directly on the economic reality of the business relationships between drivers, RDS, and the customers. Plaintiffs' motion to exclude is a naked effort on their part to deny Defendants' right to assert a defense to the allegations and claims raised in the Third Amended Complaint.

**D.      Dr. Newlon's Testimony is Reliable**

Plaintiffs' argue that Dr. Newlon is not reliable because she is not qualified as an expert and/or her opinions are not based on "intellectual rigor" and sound methodology. This argument is not credible, and Plaintiffs do not actually address or challenge Dr. Newlon's qualifications, nor could they. Dr. Newlon is an accomplished economist from a very reputable national economic research firm. Dr. Newlon has extensive expertise applying economics and statistics to matters relating to labor litigation. During her over 15 years as

an economic consultant and testifying expert, she has prepared expert reports, testified, and consulted on matters involving a wide range of topics related to FLSA and state labor law, including allegations of wage suppression. She is well qualified to present expert testimony in this case regarding economic issues related to worker classification as well as expert analysis of RDS's data. As described in her report, she led a team of economists in analyzing a vast amount of data and evidence in this case. (Newlon Rep. Ex. 2.) Her testimony is highly reliable.

Moreover, an experts' reliability is not a basis for the total exclusion of testimony. As set forth in *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014):

> The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir.2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. … But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." … The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury. *City of Pomona*, 750 F. 3d at 1044 (internal citations omitted).

Nowhere in their motion do Plaintiff's challenge her qualifications as an expert economist. Moreover, in Exhibit 2 to her report, she has fully disclosed the data and documents she relied upon offering her economic analysis and opinions. All of Plaintiffs' concerns and disagreements "go to the weight of the evidence" and "are within the province of a fact-finder, not a trial court judge." *City of Pomona*, 750 F. 3d at 1044.

Plaintiffs' motion to exclude Dr. Newlon's report should be denied.

### III.   Plaintiffs' Contentions in Reply

**A. Newlon's Improper Legal Conclusions.**

Defendants do not dispute that Newlon "may not opine at all on whether anyone who has worked for [RDS] is an employee or an independent contractor." *Perez*, 2014 WL 2810144, at *3. Instead, they claim (at 6) that "Plaintiffs do not identify any specific statement from her written report that they contend is such an ultimate conclusion." Defendants are incorrect. Plaintiffs list (at 1) each of the paragraphs of Newlon's report that set forth legal conclusions and/or statements that improperly instruct the jury as to the (incorrect) standard regarding the definition of an employer. These include, *inter alia*, her opinion that "RDS does not behave like an employer" (¶ 11); that RDS does not "conform to the economic model of an employer" (¶ 12); that "RDS does not take the role of an employer" (¶ 20); what constitutes a "true employer" (¶ 43); that RDS does not act like a true employer (¶¶ 44-48); what constitutes an "employer motor carrier" (¶ 59); and what constitutes the "antithesis of an employer-employee relationship" (¶ 62).

Defendants also claim (at 6) that Newlon "does not offer an opinion or conclusion that drivers are employees or independent contractors under any applicable legal test," which is only half-true. For instance, her conclusion that "RDS does not behave like an employer because it does not control the manner and means with which the owner-operators work for its clients," (¶ 11) purports to be based on applicable legal tests (see, e.g., ¶ 14, discussing *Borello*). However, nearly all of her other conclusions are wholly divorced from the applicable legal tests (e.g., whether RDS conforms to what Newlon calls the "economic model of an employer").[3] But that is exactly why her testimony is so problematic and

---

[3] Defendants' semantic claim that Newlon "is expressing her expert opinion on the economic realities of the relationships" does not bring her considerations and conclusions within the *economic realities test*, which looks to specific factors that have long been defined by applicable case law and are not even discussed by Newlon in relation to her so-called "economic model of an employer," an independent legal standard Defendants apparently advocate through Newlon's proffered opinions.

1  prejudicial: not only does she offer conclusions on the ultimate legal question (whether

2  RDS is an employer), but most of those conclusions are also based on entirely incorrect

3  and irrelevant considerations that have absolutely no connection to the applicable legal

4  tests or the facts that must be considered by the jury. Her testimony that purports to reach

5  conclusions divorced from consideration of multiple legal factors indicative of control

6  crafted through well-reasoned legal authority instead elevates factors held insufficient to

7  determine employee status, which will only confuse the jury and usurp the Court's role in

8  explaining the applicable law. Nor are Defendants entitled to "reframe" Newlon's

9  testimony on the eve of trial, as they suggest (at 7).

10 **B. Newlon's Opinions on Control Address Matters of Common Knowledge.**

11      With respect to Newlon's opinions regarding RDS's control, Defendants do not address

12 Plaintiffs' cited cases that hold "the degree of control…falls within the common knowledge

13 and experience of the jury and that expert testimony on the subject is excluded." *Hoyt*,

14 2010 WL 11508867, at *3. Defendants also make no effort to explain why jurors would

15 require expert testimony to understand whether Drivers determined their weekly schedule,

16 compensation, what jobs they take, or whether RDS supervised the individual movement

17 of freight (Report ¶¶ 11, 21-41). Nor is any specialized knowledge required for jurors to

18 understand the "offer rejections" or "average number of workdays," which Defendants

19 concede are mere summaries of records they produced (that Plaintiffs do not dispute) and

20 which may be presented at trial without being cloaked in expert testimony. Fed. R. Evid.

21 1006. Defendants also attempt to assert (at 8) a classic "straw man" argument by claiming

22 that Plaintiffs are challenging Newlon's "economic opinions." Plaintiffs, in fact, challenge

23 those so-called "economic opinions" on other grounds, mainly for their likelihood to

24 confuse the jury and their lack of relevance to the material issues in the case, not because

25 those opinions involve matters of common knowledge.

26 **C. Newlon's So-Called "Economic Opinions" are Not Relevant.**

27      With respect to Newlon's so-called "economic opinions," Defendants fail to provide

28 any explanation for how they have any bearing or connection to the applicable legal tests

1  that determine the employer-employee relationship. These include whether RDS has an

2  "economic incentive to retain the right to control" Drivers' work (Report ¶¶ 11, 59,64-65),

3  what Newlon refers to as the "economic model of an employer" (*id*. ¶ 12); whether there

4  are "economic reasons why RDS would not retain the right to control" Drivers' work (*id*.);

5  whether RDS and Drivers would "be worse off" if RDS increased its control of Drivers (*id*.

6  ¶¶ 49-52); and whether RDS suppressed market wages (*id*. ¶¶ 53-58). Allowing expert

7  testimony on these issues will confuse the jury and detract from the relevant facts that must

8  be considered to determine whether the employer-employee relationship exists.

9  **D. Newlon's Qualifications and Methodology.**

10      Defendants present another "straw man" argument regarding Newlon's qualifications.

11  Contrary to Defendants' assertion, Plaintiffs do not challenge Newlon's qualifications as

12  an economist. Rather, the paragraphs Plaintiffs cited above involve Newlon's opinions

13  regarding a host of topics for which she has absolutely no expert qualifications, including

14  her assertions regarding that "RDS does not take the role of an employer" (¶ 20); that "RDS

15  is not exercising employer control over the owner-operators" through its load assignment

16  system (¶ 34); that "[e]mployers would not have to consider whether an employee-driver

17  wants to do a move; they would simply tell employees to do it" (*id*.); what constitutes a

18  "true employer" (¶ 43); that RDS does not act like a true employer (¶¶ 44-48); what

19  constitutes an "employer motor carrier" (¶ 59); and what constitutes the "antithesis of an

20  employer-employee relationship" (¶ 62). Newlon is not a lawyer and not qualified to opine

21  as to whether or not RDS is an employer and these opinions are not the product of reliable

22  scientific methodology. To the extent Defendants claim these opinions are not related to

23  the legal definition of an employer, then they are totally irrelevant. In addition, as discussed

24  above, even with respect to the so-called "economic opinions" for which Newlon is

25  qualified, her conclusions are also based on unsound data and unreliable methodology, like

26  the cursory internet searches or anecdotal testimony cited above which do not meet the

27  requirements of Fed. R. Evid. 702 or *Daubert*.

28

1 Dated: August 13, 2021                    By: */s/ Michael J.D. Sweeney*

2

3                                           MICHAEL J.D. SWEENEY
                                            GETMAN, SWEENEY & DUNN, PLLC
4                                           260 Fair Street
                                            Kingston, NY 12401
5                                           (845) 255-9370
6                                           Admitted Pro Hac Vice

7                                           SUSAN MARTIN
8                                           JENNIFER KROLL
                                            MARTIN & BONNETT, P.L.L.C.
9                                           4647 N. 32nd St., Suite 185
10                                          Phoenix, AZ 85018
                                            (602) 240-6900
11                                          Admitted Pro Hac Vice

12

13                                          EDWARD TUDDENHAM
                                            23 Rue Du Laos
14                                          Paris, France
                                            33 684 79 89 30
15                                          Admitted Pro Hac Vice

16

17                                          HOWARD Z. ROSEN
                                            ROSEN MARSILI RAPP LLP
18                                          3600 Wilshire Blvd., Suite 1800
                                            Los Angeles, CA 90010
19                                          (213) 389-6050
20                                          hzrosen@rmrllp.com

21                                          *Attorneys for Plaintiffs*

22

23

24

25

26

27

28

Dated: August 13, 2021

By: /s/ Victor J. Cosentino

VICTOR J. COSENTINO
GLORIA G. MEDEL
LARSON & GASTON, LLP
200 South Los Robles Avenue,
Suite 530
Pasadena, California 91101
(626) 795-6001

*Attorneys for Defendants*

# **CERTIFICATE OF CONFERRAL**

I hereby certify that on July 23, 2021, counsel for the parties discussed in good faith the argument at issue in the foregoing Motion in Limine. The parties were unable to resolve the issue through the meet and confer process.

August 13, 2021                    By: */s/Michael J.D. Sweeney*

## CERTIFICATE OF SERVICE

I hereby certify that my office caused the foregoing to be electronically filed with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered in this case.  Any counsel not registered for electronic notice of filing with the Clerk of Court will be mailed a copy of the above and foregoing, First Class U.S. Mail, postage prepaid and properly addressed.

August 13, 2021                          By: *Michael J.D. Sweeney*