UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SALVADOR CANAVA et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>RAIL DELIVERY SERVICES INCORPORATED et al.,<br><br>    Defendants. | Case No. 2:19-cv-00401-SB-KK<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS<br>[DKT. NOS. 459, 461] |

     Plaintiffs are truck drivers who hauled freight for Defendants. They allege that Defendants misclassified them as independent contractors, paid them less than the applicable minimum wage, and committed other wage-and-hour violations of the Fair Labor Standards Act (FLSA) and California law. Dkt. No. 208. The Court certified a class and FLSA collective in February 2020. Dkt. No. 111. The Court conducted a limited jury trial on the questions of whether Plaintiffs were employees under the *Borello* test applicable to some of Plaintiffs' claims, and the jury returned a verdict for Defendants. In August 2022, the Court held a bench trial on liability and damages on Plaintiffs' claims governed by the ABC test, after which the parties engaged in further settlement discussions. Dkt. No. 451-1 at 11. After weeks of negotiation, the parties reached an agreement, and Plaintiffs moved for preliminary approval of that settlement. Dkt. No. 451, 451-2 (Settlement Agreement). The Court preliminarily approved the settlement after a hearing. Dkt. No. 456.

     Plaintiffs now move for final approval of the settlement and seek an award of attorneys' fees and costs to Plaintiffs' counsel and service awards for the class representatives and testifying class members. Dkt. Nos. 459, 461. Plaintiffs filed the motion for fees, costs, and the service awards before the deadline for objections and opt-outs by members of the class. There were no objections to or requests for exclusion from the settlement, nor did any class member object to the requested

1

fees and awards.  For the reasons stated below, Plaintiffs' unopposed motions for final approval of the class action settlement, for attorneys' fees and costs, and for service awards are GRANTED.

I.

The Court granted class certification in February 7, 2020.  The settlement class is materially identical to the class certified, except that the Court approved a cutoff date for class membership to facilitate effective settlement.  Dkt. No. 451-1 at 16.  The class is defined as "All truck drivers who, from March 4, 2015 through October 21, 2022, owned or leased a truck that they personally drove for Rail Delivery Services, Inc. (RDS) under an independent contractor agreement."  Dkt. No. 456 at 2–3.[1]

This settlement involves both class claims and claims brought under California's Private Attorneys General Act (PAGA), which allows an aggrieved employee to sue to recover civil penalties for wage and hour violations on behalf of California's Labor and Workforce Development Agency (LWDA).  Cal. Lab. Code § 2698 et seq.  Penalties that private persons recover under PAGA are distributed according to a statutory formula, with 75% going to LWDA and 25% going to all aggrieved employees.  Cal. Lab. Code § 2699(i).

The terms of the parties' settlement are set forth in the Settlement Agreement.  Defendant agrees, in exchange for the release of class and PAGA claims defined in the Settlement Agreement, to make a nonreversionary payment of $6 million, inclusive of class payments, administration costs, attorney's fees and expenses, and awards to the class representatives and testifying class members, to a settlement fund.  Settlement Agreement § I(W), I(NN) (Released Class Claims), I(OO) (Released PAGA Claims).  Payments to class members will include a base amount of $500 plus a pro rata share of the settlement amount based on the number of weeks worked for Defendant.  *Id.* at Ex. D.  A portion of the settlement amount will also be allocated as a PAGA payment.  In this case, aggrieved employees for PAGA purposes are members of the class who worked for Defendant between March 4, 2018 and the filing of the motion for preliminary approval.  *Id.* § I(D).  The $100,000 allocated from the settlement as a PAGA payment will be split

---

[1] The class does not include the individuals who opted out of the class as a result of the notice of certification sent in December 2020.  Settlement Agreement § I(L).

according to the statutory formula between the LWDA and the aggrieved employees in the class, and the $25,000 allocated for the employees will be apportioned pro rata based on weeks worked during the PAGA period.  Settlement Agreement § I(GG) & Ex. D.

Plaintiffs sought preliminary approval to seek up to 25% of the settlement fund (up to $1,500,000) in attorney's fees, up to $360,000 in costs, a $10,000 service award for each of the three named Plaintiffs, and a $5,000 service award for each of the three class members who testified at trial.  Plaintiffs now move for final approval of each of those amounts, except that they seek slightly reduced actual costs of $357,826.76.  The Court preliminarily approved Settlement Services, Inc. as the administrator of the settlement and approved no more than $25,000 to be allocated from the fund for the costs of settlement administration.  Settlement Services, Inc. filed a declaration confirming their efforts to provide notice to the class, and subsequently filed a declaration seeking an award of $26,000 in light of increased costs to administer the settlement.  Dkt. No. 466.

II.

In preliminarily approving the settlement, the Court evaluated the parties' proposed notice and procedures for noticing class members.  Settlement Agreement § II(E).  Settlement Services, Inc. received the class list on December 8, 2022 and processed the 452 class members' addresses received through the National Change of Address database to update and confirm the class members' mailing addresses.  Dkt. No. 464 ¶¶ 3–4.  The notice packet was then sent by first class mail.  Id. ¶ 5.  Of the notices mailed, 47 were returned as undeliverable, new addresses were obtained for 39 of those class members, and notices were remailed if possible.  Id. ¶ 6.  Six notices were remailed on request of counsel or class members.  Id. ¶ 8.  In the notice, class members were provided an estimated settlement share based on the number of weeks they worked and were informed that they could object to the calculation.  Dkt. No. 451-3.  Settlement Services, Inc. also established a phone line for class members to call with updated addresses, questions, or requests for information.  Id. ¶ 7.  The Court finds that this notice complies with the requirements of Rule 23 and due process.

Settlement Services, Inc. received no objections, no requests for exclusions, and no disputes about class members' share calculations.  Id. ¶¶ 10–12.

III.

Plaintiffs seek final approval of the settlement. Final approval may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)). The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, No. 17-cv-00616-JAK, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).[2]

The *Hanlon* factors support a finding that the settlement is fair, reasonable, and adequate. First, the Court evaluates together the strength of Plaintiffs' case, the risk of continued litigation, and the settlement amount. To determine if a settlement is fair, the Court must balance the strengths and weaknesses of Plaintiffs' case against the risks and expenses of continued litigation. *In re Mego*, 213 F.3d at 458–59. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). No one formula governs the Court's determination of the

---

[2] When there is a settlement prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). A settlement reached after class certification, as in this case, "ameliorate[s] the concerns regarding collusion expressed by the *Bluetooth* court." *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014).

likelihood of Plaintiffs' success, which the Ninth Circuit has described as "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

The risks of further litigation justify approval. The parties conducted a jury and bench trial on Plaintiffs' claims, and Plaintiffs assert that they "have a strong case for liability" on their California claims based on the ABC test. Dkt. No. 451-1 at 8–9. While Plaintiffs believe full liability could be over $12 million, they were unsuccessful in the jury trial, and they acknowledge that they face difficulties proving damages and uncertainties with any appeals of the jury's findings in favor of Defendants. *Id*. Because the Court at the parties' request deferred ruling on Plaintiffs' claims from the bench trial and a ruling would likely generate further litigation (including possible appeals), Plaintiffs are concerned with continued expense and Defendants' viability—especially in light of changes in trucking technology and the trucking industry. *Id.* at 9. Defendants have also moved to decertify the class, adding further uncertainty to the strength of Plaintiffs' claims. *Id.* at 10.

Under the proposed settlement, the total recovery to the class will be $6,000,000, though administrative and attorneys' fees will be deducted from that amount, leaving approximately $3,970,000 for class payments. Dkt. No. 464 ¶ 13. Notwithstanding the jury's verdict for Defendant, the total settlement fund is almost "half of Plaintiffs' 'best day' damages." Dkt. No. 451-1 at 20. This case has been ongoing since March 2019, and the ultimate results are uncertain. Class members will receive an average recovery of over $8,500 and some will receive more than $40,000 from the fund. Dkt. No. 459-1 at 5. An immediate recovery for class members is preferable to prolonged risk and further litigation expense. All things considered, this amount is fair and adequate. *See In re Mego*, 213 F.3d at 459 (holding that a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

Second, the Court examines the extent of discovery completed and the stage of the proceedings. A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. The parties not only completed discovery but also tried the case before the Court and a jury. After a hearing on the issues raised during the bench trial of this case, the parties began additional settlement negotiations and reached this Settlement Agreement. This was not a hasty settlement reached for the benefit

of counsel seeking a quick payout. To the contrary, the Court finds that there was sufficient discovery for the parties to assess the value of the case, that both sides were familiar with the facts and the relevant legal issues, and that they engaged in an arms-length negotiation in the interest of their clients. Accordingly, the work completed to date favors settlement.

Third, the Court looks at the experience and views of class counsel. Where class counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Plaintiffs are represented by counsel with significant experience in FLSA and wage-and-hour litigation collective and class actions. *See* Dkt. No. 73. Class counsel have worked on this case for more than four years, through discovery and trial, such that their views on settlement are informed. Class counsel's support for the settlement therefore weighs in favor of approval.

Fourth, the Court considers the presence of a governmental participant. No government entity is a party to this action. However, the relevant federal and state authorities were notified of the settlement consistent with the Class Action Fairness Act, and they have not raised any objections. Dkt. No. 463. Moreover, Plaintiffs sought to enforce PAGA claims on behalf of the state and affected employees, and the settlement includes a $75,000 payment to LWDA. Accordingly, this factor weighs slightly in favor of approval. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv1365-CW, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (PAGA payment to LWDA favors approving the settlement).

Finally, the Court examines the reactions of class members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529. As noted above, no class member objected to or requested exclusion from the settlement. Class members overwhelmingly support the settlement, which favors approval.

Based on its analysis of the factors for final approval, the Court finds that the settlement is "fair, reasonable, and adequate." *Lane*, 696 F.3d at 818. The Court

therefore GRANTS Plaintiffs' motion for final approval of the class action settlement.

## IV.

Plaintiffs also seek an award of attorneys' fees in the amount of $1,500,00 (25% of the settlement amount), an award of costs in the amount of $357,826.76, $26,000 for the settlement administrator, class representative service awards of $10,000 for each of the three named Plaintiffs, and service awards of $5,000 to each of the class members who testified at trial. Dkt. Nos. 459, 461. The Court addresses each of these in turn.

### A.

First, the Court considers the appropriate attorneys' fees to award. Courts may exercise discretion in cases "where a settlement produces a common fund for the benefit of the entire class" and may "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942. Regardless of which method the court applies, "the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances." *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM, 2008 WL 8150856, at *8 (C.D. Cal. July 21, 2008) (cleaned up).

Under the percentage method, the court awards counsel a percentage of the common fund in attorneys' fees, for which the Ninth Circuit has established a 25% benchmark. *Hanlon*, 150 F.3d at 1029. The benchmark should be adjusted or replaced with a lodestar calculation when "special circumstances" justify a departure. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). "In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

Class counsel seeks an award at the benchmark—$1,500,000, or 25% of the $6,000,000 settlement fund. The relevant factors support an attorneys' fee award of that amount in this case. Class counsel has extensive experience litigating wage-and-hour class actions and obtained a significant recovery for class members

in the face of substantial litigation risks.  *See* Dkt. No. 459-2 ¶¶ 24–62.  The Court finds that a benchmark fee of 25% is reasonable.

The requested fee is further supported by a cross-check against a rough estimate of the lodestar value.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Barbosa*, 297 F.R.D. at 451 (noting that a cross-check of the lodestar "can be performed with a less exhaustive cataloguing and review of counsel's hours").  The lodestar is calculated by multiplying the hours reasonably expended by a reasonable hourly rate based on the experience of counsel and the prevailing market rate in the community.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941.  Once this "lodestar" is calculated, it "may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (internal quotations and citations omitted).  Class counsel assert that their lodestar fee would be $6,034,258.35, four times their requested fee.  Dkt. No. 459-1 at 8.

Counsel state that their firms collectively have spent approximately 10,000 hours prosecuting this case over four years, approximately 6,000 by attorneys and 4,000 by paralegals.  Dkt. No. 459-2 ¶ 14; 459-1 at 8; 459-3 (summary chart of hours, rate, and total by timekeeper).  They have not yet been paid and have devoted time to investigation, filing three complaints, discovery, motion practice (including motions to compel arbitration, for class certification, and for summary judgment), mediation, trial, settlement, and approval of that settlement.  Dkt. No. 459-1 at 8-9.  Counsel "assigned tasks to attorneys and staff based on experience, knowledge in the industry, and expertise to avoid duplicative work."  Dkt. No. 459-2 ¶ 16.  Counsel also represent that their firms worked together "just as a single firm might do and have litigated this case over the course of almost four years."  Dkt. No. 459-1 at 8.  In light of this case's history, the hours they report having expended appear reasonable.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (noting that hours are reasonable where "the time could reasonably have been billed to a private client").

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*,

8

896 F.2d 403, 407 (9th Cir. 1990).  Class counsel's declarations and exhibits summarize hours and rates by lawyer or staff member and calculate the total lodestar per person.  Dkt. No. 459-3.  Counsel submit rates ranging from $260 to $1,050 across their four firms.  Id.  The rates for paralegals and in-house data scientists—specialized paralegals who prepared complex damages models—appear supported and reasonable.  See Basaraba v. Greenberg, No. CV 13-5061 PSG (SHX), 2014 WL 12591627 (C.D. Cal. Nov. 12, 2014) (approving paralegal rates between $245 and $315); Almodova v. City & Cnty. of Honolulu, No. CV 07-00378, 2010 WL 1372298 (D. Haw. Mar. 31, 2010), *report and recommendation adopted*, 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (including hours worked by analysts in lodestar calculation); Dkt. No. 459-2 at ¶¶ 41–44 (detailing data scientist experience).

Counsel assert that the rates listed for attorneys are consistent with rates approved for counsel with similar experience in this district and have been approved by courts for purposes of the lodestar cross-check.  But, in support, they cite cases that are distinguishable from this wage-and-hour class action and out-of-district cases in which courts granted their fee requests.  See, e.g., Flo & Eddie, Inc. v. Sirius XM Radio, Inc., No. CV-13-5693 PSG (GJSX), 2017 WL 4685536 (C.D. Cal. May 8, 2017) (settlement of claims arising from rights in audio recordings allegedly exploited by the defendant); Woodhouse v. United States Gov't, No. 2:21-CV-06372-SB, 2021 WL 6333451 (C.D. Cal. Dec. 31, 2021) (awarding attorney's fees and costs to defendants against plaintiff who had violated vexatious litigant orders); *Elmy v. Western Express, Inc. et al*., No. 3:17-cv-01199, Dkt. No. 518 (M.D. Tenn. Aug., 29, 2022).   The rate that counsel lists for partner timekeepers is higher than those generally approved for wage-and-hour class actions in this district.  See, e.g., Gomez v. USF Reddaway Inc., No. 16-cv-05572-JAK, 2020 WL 10964603, at *8 (C.D. Cal. Sept. 21, 2020) (finding rates between $450 and $850 to be reasonable for wage-and-hour attorneys in the Central District); Ayala v. U.S. Xpress Enterprises, Inc., No. 16-cv-137-GW, 2019 WL 1581395, at *3 (C.D. Cal. Feb. 13, 2019) (approving rates between $600 and $795).

Nevertheless, it is unnecessary to calculate the precise reductions, if any, that may be appropriate to reach a reasonable lodestar because any modified lodestar figure would still far exceed the 25% fee requested here.  See Feao v. UFP Riverside, LLC, No. 17-cv-3080-PSG, 2019 WL 12340202, at *8 (C.D. Cal. Oct. 22, 2019).  ("[C]ourts have found that [lodestar] multipliers less than one may support the reasonableness of the award.").  The Court has no hesitation in finding

9

that the amount of fees sought here is reasonable under the percentage method as supported by a lodestar cross-check.

Plaintiffs also request $357,826.76 in costs. These costs include: court costs, filing fees, expert fees, legal research, transportation and lodging, supplies, printing, postage, transcripts, costs of service, and witness fees. Dkt. No. 459-4. Such litigation costs are regularly allowed to be reimbursed from class settlements, and the Court finds the costs reasonable in this case. *E.g.*, *Barbosa*, 297 F.R.D. at 454 (noting that travel fees, mediation fees, photocopies, and delivery and mail charges are "routinely reimbursed"). Accordingly, the Court finds that the requested costs should be approved.

B.

Plaintiffs request $26,000—an increase of $1,000 from the amount preliminarily approved—for the settlement administrator, Settlement Services, Inc. The requested increase will not reduce the recovery to individual class members because counsel's costs are less than preliminarily approved and stated in the class notice. Having reviewed the declarations submitted by the administrator, the Court approves the fee request, which appears reasonable in light of the administrative difficulties it has encountered in attempting to locate class members. *See* Dkt. Nos. 464 (detailing efforts to provide notice to the class); 466 (detailing costs to date and anticipated future costs).

C.

Plaintiffs seek a $10,000 service award for each of the three named Plaintiffs: Salvador Canava, Jesus Dominguez, and Omar Rivera. Incentive awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen*, 306 F.R.D. at 266–67. Several factors guide the Court's determination of whether Plaintiff's requested award is reasonable:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation;

and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Stuart v. Radioshack Corp., No. 07-4499-EMC, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010).

The Court preliminarily expressed its concern about the appropriateness of Plaintiffs' awards, which are double the amount considered presumptively reasonable in the Ninth Circuit. Dkt. No. 456 at 4. But the named Plaintiffs declare that they were in regular contact with class counsel, responded to document and interrogatory requests, provided declarations, prepared for and attended mediation sessions, prepared for and participated in depositions, prepared for trial, and attended trial, all while employed as truck drivers and often taking time off of work. Dkt. Nos. 451-8 (Canava Decl.), 451-9 (Dominguez Decl.), 451-10 (Rivera Decl.). Because no objections were raised to the proposed service awards, and the Court finds that the named Plaintiffs have devoted significant time and resources to this case and received good results for the class, the Court finds that Plaintiffs' request for $10,000 service awards to the named Plaintiffs is reasonable and GRANTS the request.

### D.

Plaintiffs also seek service awards of $5,000 for each of the class members that testified in the trial of this case: Cesar Ruiz Castellanos, Rahul Sethi, and Zachary Wimberly. The testifying class members declare that they have been in regular contact with class counsel, provided declarations, prepared for and sat for depositions, and prepared for and attended trial, all while working as truck drivers and often taking time off work. See Dkt. Nos. 451-11 (Castellanos Decl.), 451-12 (Sethi Decl.), 451-13 (Wimberly Decl.). Because Plaintiffs request a presumptively reasonable award for the testifying class members and the testifying class members expended time and resources litigating this case on behalf of the class, the Court GRANTS the request.

### V.

For the foregoing reasons, Plaintiffs' motions for final approval of their class action settlement and for attorneys' fees and costs are GRANTED. The Court finally approves the settlement between the parties. The Court awards $1,500,000 in attorneys' fees to class counsel (Getman, Sweeney & Dunn, PLLC; Martin & Bonnett, PLLC; Edward Tuddenham; Rosen Marsili Rapp LLP), $357,829.76 in

costs to class counsel, $26,000 to Settlement Services, Inc., $10,000 to each of the three named Plaintiffs, and $5,000 to each of the three additional testifying class members.  The parties no later than April 14, 2023 shall submit an appropriate stipulation of dismissal and an agreed proposed final judgment consistent with this order.

Date: April 10, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge